**UNITED STATES of America,**

v.

**Anthony M. GRIECO, Defendant.**

United States District Court
S. D. New York.

May 21, 1958.

Paul W. Williams, U. S. Atty., S. D. New York, New York City, for the United States. Donald H. Shaw, Asst. U. S. Atty., New York City, of counsel.

John Seffern, New York City, for defendant Grieco.

LEVET, District Judge.

The defendant, Anthony M. Grieco, was indicted and convicted after trial by jury of charges of embezzlement of mail and conspiracy to embezzle mail (Title 18 United States Code Annotated, § 1709; Title 18 United States Code Annotated, § 371). This guilty verdict, rendered on April 30, 1958, covered nine counts. Following the foreman's report, the clerk asked the jury if they all so found and the jury answered in the affirmative. The attorney for the defendant stated in effect that no poll was re-

quested and the jury were discharged. No other motion was made at that time with respect to the verdict. There was ample evidence to sustain a guilty verdict.

Subsequently, and after a plea of guilt to another indictment in this court (No. C 154–324), sentence herein was set for May 14, 1958. On May 5, 1958, the court received a letter from one of the jurors. On May 8, 1958, after summoning counsel and the defendant, the court informed counsel of the letter so received and supplied a copy to each attorney. The essential part of this letter reads:

· "While in the jury room one juror was very abusive to me because I was the only one to find Mr. Grieco not guilty and holding everyone up. He got me so nervous that my heart was pounding—I was shaking and crying and so confused that I finally said guilty. I want to retract that because I don't feel that I was in any condition at that point to render such an important decision affecting this man's future."

Thereafter, defendant Grieco moved to set aside the verdict of guilty and sought an order for a new trial upon the alleged ground that he was "substantially prejudiced by intimidation, duress and abuse exercised upon a juror in the deliberation leading to the said verdict," and on the additional ground that he was "denied his right to unanimous agreement of jurors in the said finding of guilty."

■ The protection of a juror's subjective freedom of expression in consultation must be assured. The deliberations, motives and discussion of a jury leading to the rendition of a verdict normally are not subject to inquiry. Any other practice by which a court permitted a party to examine one or more jurors with respect to how they arrived at the verdict or what conversation and arguments among them took place would jeopardize all verdicts and result in a never-ending attempt to upset determinations. See Wigmore on Evidence, 3rd Ed., Vol. VIII, pp. 663–668.

As Wigmore states:

"* * * The policy which requires this is the same which forbids a consideration of the negotiations of parties to a contract leading up to the final terms as deliberately embodied in their deed, namely, the loss of all certainty in the verdict, the impracticability of seeking for definiteness in the preliminary views, the risk of misrepresentation after disclosure of the verdict, and the impossibility of expecting any end to trials if the grounds for the verdict were allowed to effect its overthrow * * *." Wigmore on Evidence, 3rd Ed., Vol. VIII, § 2349, at p. 668.

There are exceptions which include the following:

(1) Justifiable contempt proceedings based, for example, upon concealment or mis-statements of a juror on the voir dire. See Clark v. United States, 1933, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993;

(2) Factual conditions resulting from extraneous influences upon the jurors while in deliberation, for example, when a certain newspaper publication about the case under deliberation was brought into the jury room. See Mattox v. United States, 1892, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917;

(3) The correction of a mistake in the jury's uttered verdict. See, for example (although not a federal case), Spielter v. North German Lloyd Steamship Co., 1st Dept., 1931, 232 App.Div. 104, 294 N.Y. S. 358.

Accordingly, it has been stated by the United States Supreme Court that:

"* * * let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure

from them evidence of facts which might establish misconduct sufficient to set aside a verdict. * * *" McDonald v. Pless, 1915, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed. 1300.

In Clark v. United States, 1933, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993, Mr. Justice Cardozo stated:

" * * * Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world. The force of these considerations is not to be gainsaid. But the recognition of a privilege does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of a court to meditate between them, assigning, so far as possible, a proper value to each, and summoning to its aid all the distinctions, and analogies that are the tools of the judicial process. * * *" 289 U.S. at page 13, 53 S.Ct. at page 469.

In this case, even if we assume to consider the juror's letter, there is no indication of duress or intimidation. The juror joined in the verdict, apparently in the jury room before returning to the court room; she had ample opportunity when before the court to voice her dissent, but failed to do so.

In Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, the United States Supreme Court, by Mr. Justice Brown, quoted with approval a charge in which a court in a criminal case had said:

" * * * although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. * * *" 164 U.S. at page 501, 17 S.Ct. at page 157.

A juror's change of mind, therefore, during deliberation is not unwarranted, nor is it a basis for a new trial.

The weight of authority, therefore, is against the defendant. See Jorgensen v. York Ice Machinery Corporation, 2 Cir., 1947, 160 F.2d 432, 435 (opinion by Learned Hand, Circuit Judge); Rotondo v. Isthmian Steamship Co., 2 Cir., 1957, 243 F.2d 581, 583; Jordon v. United States, 1936, 66 App. D.C. 309, 87 F.2d 64, 67; Lancaster v. United States, 5 Cir., 1930, 39 F.2d 30, 33; Wigmore on Evidence, 3rd Ed., Vol. VIII, §§ 2348–2349.

The motion for a new trial is denied.

So ordered.